MAHLON HULST v. STATE.

166 So. 828.

Division A.

Opinion Filed March 23, 1936.

316

*Van C. Swearingen* and *I. J. A. Renno,* for Plaintiff in Error;

*Cary D. Landis,* Attorney General, and *Roy Campbell,* Assistant, for the State.

PER CURIAM.—An information was filed against Mahlon Hulst in the Criminal Court of Record for Dade County, in which the defendant was charged, under Section 7141 C. G. L., with the manslaughter of Montgomery Lee, effected by means of the defendant's act, procurment or culpable negligence.

The defendant was arraigned and plead "not guilty," and was tried on January 30, 1935.

The evidence showed that on the night of December 15, 1934, between eight and eight-thirty o'clock, Montgomery Lee, about eleven years of age, in company with his older brothers, Adrian and Owen, was walking home from church, travelling in a southerly direction on the west side of Second Avenue, N. W., in the city of Miami. As they approached the intersection of 71st Street with Second Avenue, the defendant, driving the small truck of J. W. Bath, hit Montgomery Lee, inflicting fatal injuries upon him, from which he died a week later in a hospital. The accident occurred near a street intersection, where a street light was located. There was testimony that the street light gave a very poor light; that a car parked along the side of the road blocked defendant's view of the children until he was close upon them; and that the truck was not going more than fifteen miles per hour at the time of the accident.

The testimony of the two surviving brothers was to the effect that Montgomery Lee, just prior to the accident, was walking with one foot on and one foot off the paved road and the surviving brothers were walking on the grass next

to the road; and that just before the truck hit Montgomery Adrian Lee jerked him off the road.

There was testimony to the effect that the impact of the truck threw the body of Montgomery Lee fifteen to twenty feet from the place where he was hit. After hitting Montgomery, the truck continued for a distance variously estimated by witnesses at from fifty to two hundred feet before stopping.

Mr. Bath, who was sitting on the right side of the truck at the time of the accident, testified that he did not see Montgomery Lee until after the truck had hit him. The defendant testified that he saw the boys "walking out on the grass over there, and they were sort of playing, looked like, one of them, sort of, just before I got to him, about to the end of the jury box there, one of them runned out in front of me, and before I could stop the truck it had runned over him, and after I seen it had runned over him I got scared and run."

After argument of counsel and instructions of the court were heard, the jury returned a verdict of guilty as charged against the defendant.

The court thereupon adjudged defendant guilty of said offense and sentenced him to imprisonment by confinement at hard labor in the State Penitentiary for ten years.

Motion for new trial was made and denied.

From the judgment of conviction and sentence, defendant took writ of error.

The first question is whether there was sufficient evidence to prove the crime alleged in the information. Under this question it is is contended that "culpable negligence" of the defendant was not shown in connection with the fatal injury of decedent.

Generally a crime has two elements, the overt act and the criminal intent; but in statutory manslaughter the element of criminal intent has been supplanted by the statutory element of "culpable negligence." See Kent v. State, 53 Fla. 51, 43 So. 773. The overt act of decedent's death by the agency of forces directly attributable to defendant has been established. There might have been a showing of culpable negligence if defendant reasonably should have seen the persons on or near the road, and drove off the road upon them; or if defendant drove off the road on the grass where the persons were, not knowing whether they were there or not and not being able to see whether they were there or not. See Mathers v. Botsford, 86 Fla. 40, 97 So. 282, 32 A. L. R. 881. There was evidence to the effect that defendant drove off the road when he hit decedent; and if he did, he was, under the circumstances, guilty of culpable negligence, and the jury's finding to that effect cannot be disturbed.

The second question is whether there was sufficient proof of the *corpus delicti* in this case.

In homicide cases, the *corpus delicti* consists of three elements, the fact of death, the criminal agency of another person as the cause thereof, and the identity of the deceased. Any proof of the *corpus delicti* based upon circumstantial evidence must be established beyond a reasonable doubt by the most convincing, satisfactory and unequivocal proof that is compatible with the nature of the case. See Deiterle v. State, 101 Fla. 79, 134 So. 42.

There was ample testimony from which the jury might reasonably have deduced that Montgomery Lee died as a result of injuries received when run over by the truck driven by the defendant. The identity of deceased was also established. Under the circumstances of this case, already

discussed hereinbefore, there was sufficient evidence upon which the jury might have found defendant guilty of *culpable negligence,* and consequently might have found him guilty of manslaughter as charged.

The third question is whether the trial court erred in admitting the testimony of policemen Roe and Lamphey to the effect that defendant after being arrested and without being advised as to his rights, told them that at the time of the accident in which decedent was fatally injured, he (defendant) was in the woods drunk.

Though a confession made to an officer by a person under arrest is inadmissible at the trial, unless it clearly appears that it was voluntarily made after he was fully advised of his rights under the law, Howell v. State, 66 Fla. 210, 63 So. 421; yet statements freely and voluntarily made by one accused of crime are admissible against him as proof of independent facts and not as proof of confession of guilt. 1 R. C. L. 472, Sec. 7. The admission of defendant to the policemen that he was drunk at the time the truck fatally injured deceased was not a confession of guilt, but was merely an admission of fact. There is no showing that this admission, although made by the accused in ignorance of his right to remain silent, was not *freely* and *voluntarily* made, and it is not inadmissible on that ground.

The fourth question is whether the trial court erred in overruling objections made to a remark said to have been made by the State Attorney in his argument to the jury, in failing to censure the State Attorney for his remarks and in failing to admonish the jury to disregard the same. The remark, which was said to be prejudicial to defendant, was in effect that if the jury believed defendant was driving the truck while under the influence of liquor, they should find him guilty. The only place in the record show-

ing that this remark was made is in the motion for new trial. If objections are to be made to any argument of counsel to the jury, the statement itself should appear in the transcript together with the objections made thereto. See Nations v. ·Harris, 214 Ala. 339, 108 So. 29; Pullman Palace Car Co. v. Lawrence, 74 Miss. 782, 22 So. 53. Statements of fact in a motion for new trial are not self supporting. Smith v. State, 90 Fla. 555, 106 So. 415. So there is nothing in the record regarding the statement said to have been made by the State Attorney which this Court can review.

The fifth question presented is whether the trial court erred in giving certain instructions to the jury.

Objection was made because the court instructed the jury as to what constituted other degrees of homicide greater than manslaughter. No error can be predicated on a charge of the court in a trial involving manslaughter in which the court defines the higher degrees of homicide, as manslaughter is defined by a process of elimination, and the court properly defined the higher degrees of unlawful homicide to enable the jury to know what constituted manslaughter. Zow v. State, 70 Fla. 214, 70 So. 18.

Objection was also made to the following charge of the court.

"This information is for manslaughter, and in order for you to understand the meaning of manslaughter, the court deems it proper to give you in charge, the definition of the various degrees of homicide. *You cannot find the defendant guilty of anything except manslaughter,* as charged in the information, but I give you these other definitions as laid down in order that you may clearly understand the meaning of the charge against the defendant in this case." (Emphasis supplied.)

Then the court proceeded to define justifiable homicide, excusable homicide, murder in the first degree and murder in the second degree, in the order named. After the definition of excusable homicide, the court charged the jury that if they found the homicide excusable, to find defendant not guilty; and after the definition of justifiable homicide, the court charged the jury that if they found the homicide justifiable, to acquit the defendant.

"In charging juries, care should be taken by the judge not to leave them under impression that, in his judgment they must convict of some degree of offense covered by the indictment, and cannot acquit. The jury should be properly instructed as to the presumption of innocence which surrounds a person on trial for crime." Wood v. State, 31 Fla. 221, 12 So. 539, 3rd headnote.

The instruction, "you cannot find the defendant guilty of anything except manslaughter," might have tended to confuse the minds of the jury, as to whether the court was instructing them that they could not do other than find defendant guilty of manslaughter, or whether the court was instructing them that they could not find defendant guilty of any degree of homicide higher than that of manslaughter. There is an absence in this instruction of any statement as to the presumption of innocence in favor of defendant, or that defendant might be found not guilty. The instruction is not to the effect that if the jury finds defendant guilty it can only find him guilty of manslaughter; but is that the jury cannot find defendant guilty of anything except manslaughter, which instruction might have left the jury under the impression that they must convict of the offense charged in the information. This instruction is contradictory to some other instructions where the jury is told that it may find defendant not guilty; but those instruc-

tions do not explain or qualify this one, and its ambiguity still remains.

The court gave the following instruction as to "reasonable doubt" to which objection was made.

"By reasonable doubt is meant a real doubt arising from the evidence or from lack of evidence in the case, and not a mere fanciful or imaginary doubt, but one for which you can give your minds and conscience a satisfactory reason after considering all of the facts and circumstances of the case."

Reasonable doubt may arise either from the evidence or from want of evidence. See Trimble v. State, 118 Neb. 267, 224 N. W. 274. But the above quoted instruction seems to be faulty in that it lacks a final clause to complete the thought of the sentence, without which it is confusing to the jury. What does this instruction mean? Does it mean that a reasonable doubt is such real doubt that, after considering all of the facts and circumstances of the case, the jury is satisfied that their minds are in a state of doubt; or does it mean that they are satisfied of the guilt or innocence of the accused? The instruction was not to the effect that after considering all the facts and circumstances of the case that the minds of the jury are not satisfied or convinced to a moral certainty that defendant is guilty as charged. In the case of Hampton v. State, 50 Fla. 55, 39 So. 421, an instruction of the court to the jury almost identical with the instruction here considered, was held erroneous by this Court on writ of error.

The sixth question does not present any point not already hereinbefore considered in this opinion, and the matter argued in that question will not be further discussed.

For the errors appearing in the proceedings of the trial

below, the judgment of conviction and sentence is reversed and a new trial is awarded defendant.

Reversed for new trial.

WHITFIELD, C. J., and ELLIS, BUFORD, and DAVIS, J. J., concur.

TERRELL, and BROWN, J. J., dissent.

BROWN, J. (dissenting).—Considering the charge as a whole, I do not think any reversible error appears. So considered, it was fair to the defendant and not calculated to mislead the jury. Nor does the record show that the defendant objected or excepted to any portion of the charge, or to the charge as a whole, and the motion for new trial does not sufficiently identify the portions of the charge which are now claimed to be erroneous. Nussbaumer v. State, 54 Fla. 87, 44 So. 712; Richardson v. State, 100 Fla. 835, 130 So. 718, Shepherd v. State, 36 Fla. 374, 18 So. 773. The statute requires this, Sec. 4367, C. G. L.